NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMON ZELAYA,<br><br>    Plaintiff,<br><br>v.<br><br>DIRECTOR ALFARO ORTIZ, et al.,<br><br>    Defendants. | No. 21cv14956 (EP) (CLW)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Ramon Zelaya, a pretrial detainee at the Bergen County Jail, New Jersey, filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983 against various employees of the Essex County Correctional Facility ("ECCF") for "inhuman jail condition[s]" while he was detained there. D.E. 1 ("Compl." or "Complaint"); *see also* D.E. 1-2 ("Pl. Ex."). Because Plaintiff has been granted *in forma pauperis* ("IFP") status, D.E. 4, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

For the reasons set forth below, Counts Two, Three, Five through Eight, and Ten through Sixteen will be **DISMISSED** *without prejudice* and Counts One, Four, and Nine will be permitted to **PROCEED** *in part*.[1]

---

[1] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by a defendant after service. *See Richardson v. Cascade Skating Rink*, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) (internal quotation marks omitted) ("[T]his Court recognizes [a] § 1915(e)

I.  **PROCEDURAL BACKGROUND**

Plaintiff submitted his Complaint on August 6, 2021.  Compl.  The Honorable Esther Salas, D.N.J., administratively terminated the Complaint on September 3, 2021, because Plaintiff failed to submit a complete IFP application.  D.E. 2.  Plaintiff submitted a revised IFP application on September 23, 2021, D.E. 3, and Judge Salas granted the application on November 30, 2021, D.E. 4.  The matter was reassigned to the undersigned on July 14, 2022.  D.E. 8.

II. **LEGAL STANDARD**

The Prison Litigation Reform Act ("PLRA") requires a district court to *sua sponte* screen a civil complaint filed by a prisoner proceeding IFP for cognizable claims and to dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from suit.  28 U.S.C. § 1915(e)(2).

To survive a *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the plaintiff's claims are facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.").

2

"The Court must accept all facts in the complaint as true, draw all reasonable inferences in the prisoner's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim." *Durham v. Kelley*, 82 F.4th 217, 223 (3d Cir. 2023).  Moreover, "[c]omplaints filed *pro se* should be construed liberally and held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

### III.  ANALYSIS

Plaintiff submitted a series of individual narratives as exhibits to his Complaint.  Pl. Ex.  For clarity, the Court considers each narrative to be a separate count, alleging various constitutional violation claims.

#### A.  Count One – Nutritionally Inadequate Diet and Retaliation

Count One, titled "medical grievance," is addressed to Medical Director Lionel Anicette.  Pl. Ex. at 1.  Plaintiff states Shanies, a kitchen staff member, and "her favorite kitchen inmate worker[,]" served Plaintiff raw eggs and bleeding chicken for meals.  *Id.*  Plaintiff went on a hunger strike because he felt unsafe eating the food on his tray.  *Id.* at 1-2.  He also requested that he be given kosher meals, as those food trays are sealed when delivered.  *Id.* at 2.  Count One, without further details, also contains an allegation that Shanies retaliated against Plaintiff.  *Id.* at 1.[2]

##### 1.  Conditions of Confinement

The Fourteenth Amendment's Due Process Clause governs the conditions of confinement for pretrial detainees.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hubbard v. Taylor*, 399 F.3d 150,

---

[2] Any claim for injunctive relief is moot because Plaintiff is no longer confined in the ECCF.  "An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."  *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003), *as amended* (May 29, 2003) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 197 (3d Cir. 1993)); *see also Mayon v. Capozza*, 2015 WL 4955397, at *5 (W.D. Pa. Aug. 19, 2015) ("A prisoner's transfer or release from prison moots his claims for declaratory relief since he is no longer subject to the conditions he alleges are unconstitutional.").

3

166 (3d Cir. 2005). "Allegations that prisons are not providing adequate nutrition falls within the broader category of conditions of confinement claims." *Stokes v. Aramark Corp.*, 2020 WL 5793688, at *2 (D.N.J. Sept. 29, 2020). "[I]nmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well being." *Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). "[C]orrections officials may not be held liable unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)." *Id.* at 719-20.

"Objectively, '[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation.'" *Id.* at 720 (alterations in original) (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). Plaintiff alleges he was given "raw eggs and bleeding chicken" every day. Pl. Ex. at 1. He alleges his health is "decay[ing] fast" and his body is "breaking up" as a result. *Id.* at 2-3. If true, this would satisfy the objective component of the claim.

"The subjective element of a Fourteenth Amendment conditions of confinement claim may be inferred when the condition 'is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Estrella v. Kelsey*, 2020 WL 4364342, at *3 (D.N.J. July 30, 2020) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)). A reasonable person could conclude that serving raw eggs and chicken every day is not related to a legitimate non-punitive government purpose. Additionally, Plaintiff's claim that this practice continued for a long period of time and only stopped when Shanies knew "that she [was] in the spot[light]" could be construed as consciousness of guilt. Pl. Ex. at 1. This would satisfy

4

the subjective component.  Therefore, the Court will permit a conditions of confinement claim to proceed against Shanies.[3]

    *2. Retaliation*

Count One also contains an allegation that Shanies retaliated against Plaintiff, *see* Pl. Ex. at 1, but Plaintiff has not sufficiently alleged facts to state such a claim.  "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).  Plaintiff has not identified any constitutionally protected conduct that he was engaging in, nor has he provided facts that would plausibly suggest that Shanies was motivated to serve Plaintiff inedible food by said conduct.  The Court will dismiss the retaliation claim against Shanies without prejudice.

**B.    Count Two – Conditions of Confinement, Denial of Mental Health Care, and Retaliation**

Next, Plaintiff alleges ECCF Director Alfaro Ortiz, Warden Guy Cirello, Lieutenant Francy, Lieutenant Barry, Sergeant Matos, Ms. Matos,[4] and Sergeant Gonzalez subjected him to punitive conditions of confinement.  Pl. Ex. at 6.  Plaintiff alleges that they put him in "lockup with no shower for 8 days" and that his cell was flooded by his cellmate.  *Id.* at 5.  He asked for help "but no one was able to help [him] . . . ."  *Id.*  Plaintiff further claims that he was denied access

---

[3] Shanies was not added to the docket as a defendant.  The Court will direct the Clerk to add her as a defendant as it is permitting a claim to proceed against her.
[4] Plaintiff lists two ECCF sergeants with the surname "Matos" in Claim Two.  Compl. at 6.  The Court adopts Plaintiff's signifier of one of the defendants as "Ms. Matos" for clarity's sake only.

5

to mental health services for "confinement trauma" and was retaliated against. *Id.* at 5, 8. The Court will dismiss Count Two in its entirety without prejudice.

   1. *Conditions of Confinement*

  Plaintiff has not stated a Fourteenth Amendment conditions of confinement claim. The inquiry courts must make is whether "'the conditions amount to punishment of the detainee.'" *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "Thus, a court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective." *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (per curiam). Here, Plaintiff alleges that his cellmate flooded the cell for three days before the cellmate was removed and that Plaintiff was denied a shower for eight days. Pl. Ex. at 5. Regulating housing assignments and detainee movements within a jail are legitimate governmental objectives, and there are no facts from which this Court could infer that the aforementioned Defendants arbitrarily failed to remove Plaintiff's cellmate sooner or did so because of an express intent to punish Plaintiff. *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). The same is true of Plaintiff's allegation that he was denied a shower for a short period of time. The Court will dismiss the conditions of confinement claim without prejudice.

   2. *Denial of Mental Health Care*

  Plaintiff further provides that he was denied mental health care for "confinement trauma." Pl. Ex. at 8. Although claims by pretrial detainees for failing to provide adequate medical care arise under the Fourteenth Amendment, they are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). To state an Eighth Amendment Claim, "a plaintiff must make

(1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (alteration in original)). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it's so obvious that 'a lay person would easily recognize the necessity for a doctor's attention.'" *Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003)).

Plaintiff states that he has "been goin[g] through a lot of confinement trauma and [his] mind has been playing tricks on [him]." Pl. Ex. at 8. However, no factual allegations support that Plaintiff was "diagnosed by a physician as requiring treatment"; what kind of treatment was denied; that the need for treatment would have been obvious to a layperson; or that the alleged denial of treatment resulted in "a life-long handicap or permanent loss." *Mitchell*, 492 F. App'x at 236. The Court will dismiss this claim without prejudice.

3. *Retaliation*

Plaintiff also appears to assert a retaliation claim in Count Two but provides no supporting factual allegations. *See* Pl. Ex. at 5 ("This retaliation at some point. It gonna have to stop as Long I am able to keep writing situation like this [illegible] keep doin it."). Due to the lack of factual allegations plausibly suggesting that the named defendants took an adverse action against Plaintiff because he was engaging in protected activity,[5] the Court will dismiss this claim without prejudice.

---

[5] The elements of a retaliation claim are set forth in the Court's discussion of Count One, Section III.A.2.

C.  **Count Three - Unidentified Claims Against Officer Gaston**

The Court cannot decipher what allegations are being made against Officer Gaston in Count Three. *See* Pl. Ex. at 9. Plaintiff's narrative begins on "Page # 2" and does not have enough information for the Court to plausibly infer a cause of action. *Id.* The Court will dismiss Count Three without prejudice for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

D.  **Count Four – Retaliation**

In Count Four, Plaintiff alleges Sergeant Navarro came to his cell and ordered him to stop filing grievances. Pl. Ex. at 10. "In a very menac[ing] way on [sic] his own words he say to me that he was sent by the Warden [Cirello] to tell me to stop sending grievances." *Id.* "He also say [sic] to me that if I don't stop sending greviance's [sic] I will be remove[d] from the Dormitory's [sic] and be put on the regular cell-rooms." *Id.* Plaintiff asserts Sergeant Navarro and Warden Cirello knew that being moved from the dormitories was "one of [Plaintiff's] bigg[est] fears." *Id.*

Accepting the facts alleged in the Complaint as true and giving Plaintiff the benefit of all reasonable inferences, he has stated a First Amendment retaliation claim against Warden Cirello and Sergeant Navarro.[6] *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (explaining that filing prison grievances "implicates conduct protected by the First Amendment"). Sergeant Navarro's threat, given at Warden Cirello's direction, that Plaintiff would be moved if he continued to file grievances can be interpreted as retaliation. *See Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017) ("[H]is alleged act of retaliation is a particular kind — one taking the form of the official's own speech."); *McLaughlin v. Watson*, 271 F.3d 566, 573 (3d Cir. 2001) (internal citation omitted) (holding public official's speech may be a retaliatory act when there was "a threat,

---

[6] The elements of a retaliation claim are set forth in the Court's discussion of Count One, Part III.A.2.

8

coercion, or intimidation, intimating that punishment, sanction, or adverse regulatory action will follow"). Therefore, the Court will permit this retaliation claim to proceed against Warden Cirello and Sergeant Navarro.

E. **Counts Five, Six, Seven, and Sixteen – Free Association, Discrimination, and Denial of Mental Health Care**

Counts Five, Six, Seven, and Sixteen allege that Plaintiff was denied his First Amendment free association, Fourteenth Amendment equal protection, and Fourteenth Amendment health care rights in connection with a video visit on May 17, 2021. Plaintiff alleges that Officer Lisboa O. told Plaintiff that "they were goin [sic] to do 2 inmate at the time for video visit . . . ." Pl. Ex. at 11. Plaintiff asked to go to the visit with his family at 4:30 pm when another inmate returned, but Officer Lisboa O. told Plaintiff to wait. *Id.* At 5:30 pm, Plaintiff was still waiting for his turn when Officer Lisboa O. went on break and was replaced by Officer Sharrieff. *Id.* Plaintiff alleges that he told Officer Sharrieff that he was supposed to have his video visit at 4:30 pm, but Officer Sharrieff told Plaintiff that he could not go because the visit area was full. *Id.* at 44. Plaintiff asserts he saw one Muslim inmate return from a video visit and ask Officer Sharrieff "why he was doin [sic] that to [Plaintiff]." *Id.* Officer Sharrieff still refused to take Plaintiff for his visit, so Plaintiff went to speak with Sergeant Gibson. *Id.* at 45.

Plaintiff approached Sergeant Gibson while he was on the phone and attempted to explain the situation, but Sergeant Gibson "hung up the phone in a very rude way" and said "'yo yo go back!'" to Plaintiff. *Id.* at 15. Plaintiff assumed Sergeant Gibson was speaking to him this way because Sergeant Gibson had been speaking with Officer Sharrieff. *Id.* Plaintiff told Sergeant Gibson that if he would not let Plaintiff explain himself, Sergeant Gibson "might as well just go ahead and sent [sic] me to lockup . . . ." *Id.* After being sent to lockup, Plaintiff requested to speak with a "mental health doctor as a emergency" but custody and medical officials denied his request.

9

*Id.* at 16.  He was told that there were no mental health professionals available at the moment but that he could be seen the next day.  *Id.* at 17.

The next day, Plaintiff spoke with Dr. Whitney.  *Id.* at 18.  He states that he asked Dr. Whitney to come see him privately because it was an "emergency."  *Id.*  She allegedly replied that she was not able to at that moment because "they were too[o] busy but that she was goin [sic] to be back in 3 day . . . ."  *Id.*  Plaintiff told her it was an emergency, and he was "suffering of malnutrition and dehydration" because of the food situation alleged in Count One.  *Id.* at 19.  Plaintiff states he has manic-depressive disorder, bipolar disorder, obsessive-compulsive disorder, anxiety, physical pain, and mental anguish in addition to "traumatic brain injury."  *Id.*

1. *Right of Association*

The Court construes Plaintiff's allegation that he was denied a video visit as a claim that the officers violated Plaintiff's First Amendment right of association.

"[A]n inmate 'retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'"  *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987).  "[F]reedom of association is among the rights least compatible with incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citing *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125–126 (1977); *Hewitt v. Helms*, 459 U.S. 460 (1983)).  "Some curtailment of that freedom must be expected in the prison context." *Id.*  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner*, 482 U.S. at 89.

Plaintiff has not sufficiently alleged that Officers Lisboa O. and Sharrieff violated his association rights.  He alleges that he missed one video visit with his family, not that he was banned

10

from all video visits.⁷  Even after construing the facts alleged in Plaintiff's favor, there are not enough factual allegations made to infer that the officers acted arbitrarily or for reasons unrelated to legitimate penological interests.  *See Overton*, 539 U.S. at 137; *Turner*, 482 U.S. at 89.  At worst, it appears there was a non-actionable scheduling error in getting detainees to their video visits, and scheduling visits in an orderly manner is a legitimate penological interest.  *See Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002) (noting a state "has a legitimate penological interest in maintaining order and security within the prison system").  Plaintiff has not stated a free association claim.

   2.   *Equal Protection*

Plaintiff also has not stated a claim against Sergeant Gibson or Officer Sharrieff for violating his equal protection rights.  To state an equal protection claim pursuant to the Fourteenth Amendment, Plaintiff would have to "allege that he was treated differently from other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected group . . . ."  *Watlington on behalf of FCI Schuylkill Afr. Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018).  Alternatively, Plaintiff may allege that he was discriminated against as a "class of one," which would require him to allege facts showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  There are no facts in the Complaint from which the Court could plausibly infer a cause of action under either theory.

---

⁷ The Complaint does not appear to allege that the policy of having two detainees have video visits at the same time violates the First Amendment.

11

*3.     Denial of Mental Health Care*

Plaintiff also has not sufficiently alleged that Dr. Whitney was deliberately indifferent towards his serious medical needs. "A serious medical need exists when a 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Graziano v. Pa. Dep't of Corr.*, 2023 WL 6389756, at *20 (W.D. Pa. Sept. 30, 2023) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)). Merely listing medical conditions does not sufficiently allege that Plaintiff needed treatment at the time he requested to speak with Dr. Whitney. He also has not sufficiently alleged that Dr. Whitney did not use professional judgment in determining that his request was not an emergency. "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment." *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). In other words, Plaintiff must provide facts about the nature of the emergency and what was communicated to Dr. Whitney before the Court can plausibly infer that she delayed necessary medical care because of her schedule and not because she employed professional judgment.

The Court will dismiss Counts Five, Six, Seven, and Sixteen without prejudice for failure to state a claim.

**F.     Count Eight – Procedural Due Process**

Count Eight alleges that Hearing Officer Nichola Condito violated Plaintiff's Fourteenth Amendment due process rights in connection with a disciplinary hearing proceeding. Pl. Ex. at 20. Plaintiff asserts that he received notice of his disciplinary charge three days after the alleged incident and three days after he was placed into disciplinary lockup. *Id.* He argues "there is no more excuses for not give [sic] the inmates in lockup to have our no more them [sic] 24 hour's court hearing." *Id.*

"Generally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)); *see also Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979). Pretrial detainees have "the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." *Kanu*, 739 F. App'x at 116 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).

Here, Plaintiff objects to receiving notice of his charges three days after the alleged incident. Pl. Ex. at 20. He does not state how long it took to conduct a hearing after he received that notice. *Wolff* only requires notice of the charges at least 24 hours before a hearing; it does not require prison officials to issue charges within a certain amount of time. Additionally, detainees may be placed in prehearing disciplinary lockup so long as they are "afforded a hearing within a reasonable time after placement . . . ." *Layton v. Beyer*, 953 F.2d 839, 850 (3d Cir. 1992). What is "reasonable" is fact-dependent, *see id.* at 851 & 851 n.19, and there are no factual allegations made from which to infer that Plaintiff was detained for an unreasonable amount of time before his hearing occurred. The Court will dismiss this claim without prejudice.

G.  Count Nine - Free Exercise, Discrimination, and Unreasonable Force

In Count Nine, Plaintiff alleges Sergeant Matos discriminated against him by refusing to house him with other Muslim detainees. Pl. Ex. at 21. According to the Complaint, Plaintiff requested to be returned to his "5-D-3 300" housing assignment after being released from lockup so he could continue his conversion to Islam. *Id.* at 22. He alleges Sergeant Matos refused to return him to that location "for no reason at all." *Id.* at 25. Plaintiff states he wanted to "go back

13

there and take my Shahadah to become a[n] official Muslim but I only doin [sic] that with the Brother that I started from the beginning." *Id.* Plaintiff also states Sergeant Matos kept him handcuffed for three hours "just cause he [felt] like it." *Id.* at 28. The Court construes this as a free exercise claim under the First Amendment, Fourteenth Amendment equal protection claim, and Fourth Amendment unreasonable force claim.[8] The Court will permit the free exercise claim to proceed but will dismiss the equal protection and unreasonable force claims without prejudice.

　　*1. Free Exercise*

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."). "When a prisoner claims that his or her right to exercise religion has been curtailed, a court must determine as a threshold matter whether the prisoner has alleged a belief that is 'both sincerely held and religious in nature.'" *Heleva v. Kramer*, 214 F. App'x 244, 246 (3d Cir. 2007) (per curiam) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000)). "If so, the court must then apply the four-factor test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether the curtailment at issue is 'reasonably related to penological interests.'" *Id.* (quoting *DeHart*, 227 F.3d at 51)). "Although

---

[8] The Court does not construe the Complaint to raise a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* because damages are not an available remedy under RLUIPA. *See Tanvir v. Tanzin*, 894 F.3d 449, 466 (2d Cir. 2018) ("RLUIPA does not permit the recovery of money damages from state officials sued in their individual capacities . . . ."), *aff'd*, 141 S. Ct. 486 (2020); *Payne v. Doe*, 636 F. App'x 120, 125 (3d Cir. 2016) (citing *Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012)) ("[T]he only relief potentially available to [Plaintiff] for his RLUIPA claims is injunctive or declaratory. RLUIPA does not allow for the recovery of money damages."). Any injunctive relief claims are moot because Plaintiff is not detained in ECCF anymore.

the *Turner* test was articulated in the context of challenges to prison regulations, as opposed to challenges to individual conduct, the analysis in the later context is the same." *Id.* at 246 n.1.

Plaintiff has satisfactorily alleged that he has a sincerely held religious belief that he must prepare for his Shahadah with the inmate who has been mentoring him in his faith. Pl. Ex. at 25-26. He alleges Sergeant Matos interfered with the exercise of his religion by refusing to return Plaintiff to his prior housing assignment "for no reason at all." *Id.* at 25. If true, this would violate the First Amendment. The Court will therefore allow this claim to proceed against Sergeant Matos.

2. *Equal Protection*

To state an equal protection claim under the Fourteenth Amendment, Plaintiff would have to "allege that he was treated differently from other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected group . . . ." *Watlington*, 723 F. App'x at 139. Plaintiff has not satisfied this standard because he does not allege that non-Muslim inmates are treated differently in making housing assignments. He also has not alleged any facts from which to infer a "class of one" equal protection claim because Plaintiff has not provided facts suggesting he was "intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Therefore, the Court will dismiss the equal protection claim without prejudice.

3. *Unreasonable Force*

Plaintiff also has not stated a Fourth Amendment unreasonable force claim. To state such a claim, Plaintiff must provide facts that support a reasonable inference that Sergeant Matos purposely or knowingly used objectively unreasonable force against him. *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396

15

(1989)). Here, Plaintiff only states that Sergeant Matos kept him handcuffed for three hours "just cause he [felt] like it." Pl. Ex. at 28. Plaintiff does not allege that he incurred any injury because of the length of time or that he asked to be released and Sergeant Matos refused to do so. Therefore, the Court will dismiss the unreasonable force claim without prejudice.

**H.     Count Ten – Conditions of Confinement**

In Count Ten, Plaintiff alleges a Fourteenth Amendment conditions of confinement claim against Sergeant Gonzalez. Pl. Ex. at 30.[9] Plaintiff states a sprinkler malfunctioned and started flooding his cell. *Id.* at 31.[10] According to Plaintiff, Sergeant Gonzalez left Plaintiff and his cellmate in the cell for three hours before removing them. *Id.* at 32. Plaintiff and his cellmate were taken to the gymnasium the next morning so the plumbers could work in the cell. *Id.* at 33. Plaintiff alleges that his cellmate and he were not able to change clothing and were left handcuffed in the gymnasium for about an hour. *Id.* at 33. He states he began to feel ill due to having to wear the wet clothing for an extended period. *Id.* at 34. According to Plaintiff, they were not able to take a shower until the next day. *Id.* at 36.

Plaintiff has not stated a claim under the Fourteenth Amendment for unconstitutional conditions of confinement. "In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty." *Hope v. Warden York County Prison*, 972 F.3d 310, 325 (3d Cir. 2020). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" *Id.* at 326 (quoting *Hubbard v.*

---

[9] Plaintiff also mentions in Count Ten that he asked Sergeant Gonzalez to retrieve Plaintiff's "legal work" but "came back with no answer" after leaving to check Property Inventory. Pl. Ex. at 30. These facts do not plausibly support a claim for either denial of access to the courts in violation of the First Amendment or a Fourteenth Amendment due process violation.

[10] This incident appears to be unrelated to the flooding incident recounted in Count Two.

16

*Taylor*, 538 F.3d 229, 231 (3d Cir. 2008) ("*Hubbard II*")). "'[T]he ultimate question' is whether conditions are 'reasonably related to a legitimate governmental objective.'" *Id.* (alteration in original) (quoting *Hubbard II*, 538 F.3d at 236). If detainees "are subject to conditions unrelated to a legitimate governmental objective, we may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees." *Id.* (internal quotation marks omitted). Courts must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-60 (3d Cir. 2005) ("*Hubbard I*")).

Here, Plaintiff was confined in a flooded cell for a relatively short amount of time, and prison officials responded to address the flooding. He was able to take a shower not too long after the incident. Coordinating a response to a plumbing emergency is a legitimate purpose, and the totality of the circumstances does not support an inference that Plaintiff was subjected to punitive conditions of confinement. The Court will dismiss this claim without prejudice.

I.  **Count Eleven – Unidentified Claim Against Lieutenant Francis**

In Count Eleven, Plaintiff states that "all the doors on each cellroom on [his] unit" opened one evening for no apparent reason. Pl. Ex. at 38. A code was called and a team responded to secure the detainees. *Id.* Plaintiff took advantage of the opportunity to approach Lieutenant Francis and ask about an egg crate mattress that had been ordered, "but her answer was not now!" *Id.*

The Court cannot ascertain a cognizable cause of action in Count Eleven. Thus, Count Eleven will be dismissed without prejudice for failure to state a claim.

**J.      Count Twelve – Unidentified Claim Against Officer Bader**

A scanning error in Count Twelve prevents the Court from seeing the whole of Plaintiff's allegations, but it cannot ascertain a cognizable cause of action in the portions of Count Twelve that it can read. *Id.* at 39-40. Plaintiff states he gave Officer Bader an envelope for mailing to the U.S. Marshals Service, but Officer Bader threw the envelope back onto Plaintiff's bed. *Id.* at 39. This is not enough to state a claim for relief pursuant to Section 1983; therefore, the Court will dismiss Count Twelve without prejudice.

**K.      Count Thirteen – Free Exercise**

Count Thirteen appears to be a letter to Steven Rosenbaum, the Section Chief of the "Special Litigation Section." *Id.* at 41. Plaintiff states that he is being denied the ability to practice Islam and was told that Rosenbaum's "office can assist [him]" in addressing the situation. *Id.* The Court presumes for screening purposes that Plaintiff is referring to his claim against Sergeant Matos in Count Nine, but Plaintiff has not stated a cause of action in Count Thirteen even with this presumption. Plaintiff does not make any allegations against a specific officer here, nor does he allege that Rosenbaum has personally taken an action that would violate Plaintiff's constitutional rights. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("[A] plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct."). Therefore, the Court will dismiss Count Thirteen without prejudice.

**L.      Count Fourteen – Discrimination and Retaliation**

In Count Fourteen, Plaintiff states that he is being discriminated against and retaliated against for speaking out. Pl. Ex. at 42. He does not provide any factual allegations, nor does he state who is discriminating against him or retaliating against him. Therefore, the Court will dismiss Count Fourteen without prejudice.

18

**M.     Count Fifteen – Alleged Threats**

In Count Fifteen, Plaintiff alleges that Nurse Cristal, who is not listed on the docket as a defendant, threatened him. *Id.* at 43. The Court cannot properly review Plaintiff's allegations as some pages appear to be missing from his Exhibit. *Id.* The Court will dismiss Count Fifteen without prejudice as the included pages do not state a claim for relief.

**IV.    CONCLUSION**

For the reasons stated above, Counts Two, Three, Five through Eight, and Ten through Sixteen will be **DISMISSED** *without prejudice*, 28 U.S.C. § 1915(e)(2)(B)(2)(ii). Count One may **PROCEED** against Shanies with respect to Plaintiff's conditions of confinement claim, but the retaliation claim included in Count One will be **DISMISSED** *without prejudice*, 28 U.S.C. § 1915(e)(2)(B)(2)(ii). Count Four may **PROCEED** against Warden Guy Cirello and Sergeant Navarro. Count Nine may **PROCEED** against Sergeant Matos on Plaintiff's free exercise claim, but the equal protection and unreasonable force claims will be **DISMISSED** *without prejudice*, 28 U.S.C. § 1915(e)(2)(B)(2)(ii).

An appropriate Order follows.

 1/24/2024  
Date

Evelyn Padin, U.S.D.J.